IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

L.V., BY AND THROUGH HIS MOTHER, R.V.,

    Plaintiff,

v.

JEFFERSON PARISH SCHOOL BOARD,
EMILY ANDERSON, and
MELANIE WHEELER

    Defendants.

Case No. 2:21-cv-1541
Jury Demanded

# COMPLAINT

Plaintiff, by and through undersigned counsel, alleges as follows:

## PRELIMINARY STATEMENT

1. This case involves unlawful corporal punishment against a child with a disability. The plaintiff—a seven-year-old boy with autism—was struck on the arm by his paraprofessional with a ruler.

2. Despite learning about the incident immediately after it occurred, the school's principal did not inform Plaintiff's parents until four days later. Worse, the school principal lied to the police by telling the responding police officer that the parents did not want to press criminal charges.

3. Several months later, Plaintiff suffered a seizure at school, during which he was convulsing. But school officials did not inform his parents until three days later.

4. This is a civil action for declaratory relief, injunctive relief, monetary damages, and punitive damages to redress disability-based discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*, La. Rev. Stat. §§ 46:1953, 51:2247, and La. Const. art. I, § 12. Plaintiff also asserts federal constitutional claims under 42 U.S.C. § 1983, and tort claims under Louisiana law.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 794; 42 U.S.C. §§ 1983, 12132; and 28 U.S.C. § 1367(a).

6. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

7. Plaintiff, a minor child, is a person with a disability and a resident of Louisiana.

8. Plaintiff has a "disability," as defined by 42 U.S.C. § 12102, 29 U.S.C. § 705(20), and La. Rev. Stat. §§ 46:1952(2), 46:2253(12), 51:2232(3)(a).

9. Plaintiff is a "person aggrieved" under 29 U.S.C. § 794a(a)(2) and La Rev. Stat. § 46:1956(C), a "person alleging discrimination on the basis of disability" under 42 U.S.C. § 12133, a person "subject to unlawful discrimination" under La. Rev. Stat. 46:2256(B), and a "person deeming h[im]self injured" under La. Rev. Stat. § 51:2264.

10. Plaintiff is a person "depriv[ed]" of his rights "secured by the Constitution" under 42 U.S.C. § 1983.

11. Defendant Jefferson Parish School Board is the school board for Jefferson Parish, Louisiana, consistent with La. Rev. Stat. § 17:51. Its principal place of business is 501 Manhattan Blvd, Harvey, LA, 70058.

12. Defendant Emily Anderson is the Principal of John James Audubon Elementary School. Plaintiff brings these claims against her in both her official and individual capacities.

13. Defendant Melanie Wheeler was an employee of Jefferson Parish Public School System, which was created by the Jefferson Parish School Board. She was a paraprofessional at John James

Audubon Elementary School. Plaintiff brings these claims against Wheeler in her individual capacity.

## FACTUAL ALLEGATIONS

14. John James Audubon Elementary School (aka "J.J. Audubon") is a public school in Jefferson Parish, operating under the jurisdiction of the Jefferson Parish Public School System. It is located at 200 W. Loyola Dr., Kenner LA, 70065.

15. Emily Anderson is the Principal of Audubon Elementary.

16. Plaintiff is a seven-year-old boy with autism, also known as autism spectrum disorder.

17. Autism is a "disability" under federal and Louisiana antidiscrimination laws, because it is a condition that substantially limits one or more major life activities.

18. Plaintiff is nonverbal, meaning that he is unable to communicate with words.

19. Plaintiff receives "special education" within the meaning of the Individuals with Disabilities Education Act (IDEA), a federal law not applicable to this suit.

20. Plaintiff is represented by attorneys with Loyola University Law School's Education Clinic. The Loyola Law Clinic's attorneys and student attorneys ensure that Plaintiff receives adequate special education services under the IDEA, and they do not represent Plaintiff in this lawsuit.

21. Louisiana law strictly forbids school officials from using corporal punishment against any "student with an exceptionality" or any "student who has been determined to be eligible for services under Section 504 of the Rehabilitation Act of 1973 and has an Individual Accommodation Plan." La. Rev. Stat. § 17:416.1(B)(2).

22. Autism is an "exceptionality" under La. Rev. Stat. § 17:416.1(B)(2).

23. There is never any justification for slapping a child with autism, because there is no state interest in administering corporal punishment against children with disabilities.

3

24. The Jefferson Parish School Board has no training or policies in place to ensure that school officials refrain from using corporal punishment against students with disabilities.

25. Corporal punishment against a child with a disability is considered "abuse" under article 603 of the Louisiana Children's Code.

26. The Louisiana Children's Code requires that certain school employees, called "mandatory reporters," immediately report alleged or suspected child abuse and/or neglect to the Department of Children and Family Services (DCFS) or law enforcement. La. Child. Code art. 609–10.

27. Principal Anderson is a "mandatory reporter" under the Louisiana Children's Code. La. Child. Code art 609.

28. Principal Anderson has a duty to ensure that school employees at Audubon Elementary receive proper training, including on their obligations to students with disabilities under state and federal law.

29. Principal Anderson is also responsible for overseeing school employees and ensuring that they follow all laws, regulations, school policies, and the U.S. Constitution.

30. There are no cameras inside the classrooms at Audubon Elementary.

*First incident: Melanie Wheeler is caught slapping Plaintiff*

31. Because of his disability, Plaintiff is shadowed at school by a special needs paraprofessional (SNP), which is a person who assists teachers in making sure a child's education complies with the child's individualized education plan under the IDEA.

32. Defendant Melanie Wheeler was assigned as Plaintiff's SNP in or around August 2019, when Plaintiff was in the first grade.

33. On March 2, 2020, Plaintiff came home from school with bruises on his arm.

34. Because he is nonverbal, he was unable to communicate to his parents where the bruises came from.

35. Plaintiff's mother took photographs of the bruises and sent them to Plaintiff's lawyers with the Loyola Law Clinic.

36. The Loyola Law Clinic explained to Plaintiff's mother that it handles education disputes, not these types of disputes.

37. A friend of Plaintiff's mother recommended that she call the police, which she did on March 4, 2020.

38. A police officer arrived at Plaintiff's house to take a report from Plaintiff's mother.

39. Plaintiff's mother is a native Spanish speaker and speaks virtually no English.

40. The police officer who took the report did not speak Spanish, and he did not bring a translator with him. Instead, Plaintiff's mother spoke to a Spanish-speaking 911 operator on the phone, who then tried to relay her statements to the police officer on the scene.

41. Plaintiff's mother told the officer that she believed someone had struck her son, which caused the bruising.

42. Plaintiff's mother indicated that she suspected a particular teacher had hit her son, but clarified that she did not have any proof that it was this particular teacher.

43. The next day (May 5), the police officer went to the school to speak with Principal Anderson about the report that he took from Plaintiff's mother.

44. The next day (May 6), Plaintiff's mother went to drop off her son to school, and Principal Anderson confronted her, asking "Why did you call the police?"

45. Plaintiff's mother explained that she believed one of the teachers had hit her son.

46. Principal Anderson responded that "that didn't happen here," and "I don't have time to deal with this stuff."

47. On March 22, 2020, Louisiana Governor John Bel Edwards issued a stay-at-home order, which lasted until May 14, 2020.  Plaintiff attended school "virtually" for the remainder of the school year.

48. Plaintiff returned to in-person schooling in Fall 2020.

49. Several months later, on Thursday December 17, 2020, Ms. Wheeler was with Plaintiff in one of the classrooms.

50. At some point on December 17, 2020, Ms. Wheeler struck Plaintiff on the arm with a ruler in the classroom.

51. There is no video of the incident, because there were no video cameras in the classrooms at Audubon Elementary at this time.

52. Another SNP named Estrella Dismukes was present in the classroom and witnessed Ms. Wheeler hitting Plaintiff.  Ms. Dismukes reported the incident to Principal Anderson the same day.

53. Ms. Dismukes also gave a contemporaneous account of the incident to another SNP, named Darice Breath, shortly after reporting it to Principal Anderson.

54. Principal Anderson contacted the Kenner Police Department on December 17, 2020 to obtain an "item number" for "possible abuse" by a staff member, and a school resource officer arrived to take the report at 1:57pm.

55. Principal Anderson told the responding officer that "at the recommendation from the school board administration, she would first do an initial investigation and then turn over her findings

to the officer if warranted and if the parent of the student would like to pursue charges in the matter."

56. Principal Anderson did not contact Plaintiff's parents that day.

57. At 3:00pm on December 17, 2020, Principal Anderson advised the resource officer that "the matter was handled internally and [that] the mother [of Plaintiff] did not wish to pursue the matter criminally."

58. At that point, the Kenner Police Department closed the file.

59. Principal Anderson's statement that Plaintiff's mother did not wish to pursue criminal charges was a lie, because Principal Anderson did not even speak to Plaintiff's parents that day.

60. In fact, Plaintiff's parents were not notified of the incident until *four days later*, when General Counsel for the Jefferson Parish School Board, Patricia Adams, called one of Plaintiff's attorneys with the Loyola Law Clinic on December 21, 2020, to say that there was an "incident" at school in which an SNP had struck Plaintiff with a ruler.

61. The Loyola Law Clinic attorney then communicated this information to Plaintiff's mother.

62. After learning of the incident, Plaintiff's mother drove straight to school and met with Principal Anderson.

63. Plaintiff's mother then asked, "Who hit my son? Was it Ms. Melanie?"

64. Principal Anderson responded, "I can't say. But she's not working at this school anymore."

65. Principal Anderson did not contact DCFS.

66. Plaintiff's mother later asked another school official who hit her son, and this person confirmed her suspicion that it was Melanie Wheeler who hit her son.

67. After the holidays, in early January, Plaintiff's mother learned that a police report had been filed. She called Audubon Elementary to ask for the police report number. A school receptionist told her "We can't give that information to you."

68. Plaintiff's mother responded, "But it's my right, I'm his mother."

69. Plaintiff's mother then called again and asked the school for the police report number. This time, the receptionist told Plaintiff's mother that Principal Anderson would call her back soon with that information. Principal Anderson did not call back.

70. Plaintiff's mother finally called the Kenner Police herself, and a Kenner Police employee confirmed that a report had been filed, but explained that the report stated that Plaintiff's mother did not wish to pursue criminal charges.

71. Plaintiff's mother then retained undersigned counsel, who contacted the author of the report, Officer Larry Cosse.

72. Counsel for Plaintiff explained to Officer Cosse that Principal Anderson had lied when she told him that Plaintiff's parents did not wish to pursue criminal charges against Melanie Wheeler.

73. At that point, Officer Cosse reopened the investigation and forwarded the matter to the Kenner Police's detective division.

74. Detectives from the Kenner Police department initiated an investigation into the matter.

75. Administrative officials of the Jefferson Parish School Board directed Ms. Dismukes and Ms. Breath not to cooperate with the investigation, other than to confirm very basic information about the incident they had already provided to school board officials.

76. According to the Kenner Police investigation, Ms. Dismukes confirmed that she witnessed Ms. Wheeler hit Plaintiff with a ruler.

77. According to the Kenner Police investigation, Ms. Breath confirmed that Ms. Dismukes told her about the incident the same day. Ms. Breath also stated that she had witnessed "other incidents" of misconduct, but she did not elaborate on what she meant by "other incidents."

78. The Kenner Police presented the findings of their investigation to the Jefferson Parish District Attorney, which is currently considering whether to bring criminal charges against Ms. Wheeler.

79. Melanie Wheeler struck Plaintiff with a ruler because of his disability.

80. Melanie Wheeler failed to reasonably accommodate Plaintiff's disability.

81. Ms. Wheeler knew, or reasonably should have known, that federal and state law prohibit slapping children with disabilities.

82. Principal Anderson's acts and omissions were taken because of, or with deliberate indifference to, Plaintiff's disability.

83. Audubon Elementary has no policies or training in place to prevent teachers from using corporal punishment.

84. Principal Anderson did not implement, conduct, or oversee any training of teachers at Audubon Elementary with regard to corporal punishment.

85. Jefferson Parish School Board does not have any policies in place to train its employees on their obligation not to use corporal punishment against students with disabilities.

86. Jefferson Parish School Board is vicariously liable for the wrongdoing of its employees.

87. Jefferson Parish School Board and Principal Anderson acted with deliberate indifference to their duty to train employees not to use corporal punishment against students with disabilities.

88. The individual defendants were acting as agents of the Jefferson Parish School Board.

89. Non-disabled students at Audubon Elementary are not subjected to corporal punishment.

90. Ms. Wheeler did not slap any students who do not have disabilities.

91. Upon information and belief, Melanie Wheeler is the person who caused bruising on Plaintiff's arms in March 2020.

92. Upon information and belief, Melanie Wheeler struck Plaintiff on several other occasions, and other school officials knew or reasonably should have known that she was hitting Plaintiff.

93. Once Melanie Wheeler was no longer in Plaintiff's classroom, Plaintiff's mood improved drastically, and his behavioral issues became less severe.

94. While Ms. Wheeler was Plaintiff's SNP, Plaintiff would frequently wet himself, and his mother had to put him in training diapers, which she had to change upwards of twenty times per day. He would also frequently wet the bed during this time period.

95. Once Ms. Wheeler was removed from Plaintiff's classroom, Plaintiff no longer had any urination issues, and was immediately able to hold his urination and use the toilet.

***Second incident: school officials wait three days to notify Plaintiff's parents about two seizures occurring on the same day.***

96. On Friday April 16, 2021, Plaintiff had two seizures during class, one right after another.

97. Jefferson Parish School Board's "Procedures and Policies" handbook states that, whenever there is a medical emergency, "[e]very attempt shall be made to contact the parent/legal guardian or other person(s) listed on the Emergency Card, even after school hours."

98. In both cases, Plaintiff was on the floor and his whole body was shaking, particularly his lower body. His eyes were rolling to the back of his head, and his facial muscles were twitching.

99. He was taken to the school nurse, who examined him, but school officials did not call any other medical professionals.

100. School officials did not notify Plaintiff's parents of these seizures until Monday, April 19, 2021—three days after the incident.

10

101. The next day, Plaintiff's mother took Plaintiff to a pediatrician, who referred a neurologist for Plaintiff, as Plaintiff's parents had never known Plaintiff to experience seizures before.

102. In failing to call an ambulance or notify Plaintiff's parents, Principal Anderson and other school officials showed deliberate indifference to Plaintiff's disability-related needs.

### FIRST CLAIM – Disability Discrimination (Section 504 of the Rehabilitation Act)

103. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

104. Defendant violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because it is a recipient of federal funds, and it discriminated against Plaintiff solely on the basis of his disability.

105. Defendant treated Plaintiff less favorably because of his disability, failed to provide a reasonable accommodation for Plaintiff's disability, and knowingly allowed a hostile education environment on the basis of his disability.

106. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

107. Plaintiff suffered injuries as a result of Defendant's conduct.

108. Plaintiff asserts this claim against Jefferson Parish School Board.

### SECOND CLAIM – Disability Discrimination (ADA)

109. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

110. Defendant violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, because it is a public entity that discriminated against Plaintiff on the basis of his disability.

111. Defendant treated Plaintiff less favorably because of his disability, failed to provide a reasonable accommodation for Plaintiff's disability, and knowingly allowed a hostile education environment on the basis of his disability.

112. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

113. Plaintiff suffered injuries as a result of the Defendant's conduct.

114. Plaintiff asserts this claim against Jefferson Parish School Board.

### THIRD CLAIM – Disability Discrimination (La. Rev. Stat. § 46:1953)

115. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

116. Defendant violated La. Rev. Stat. § 46:1953 because it denied a "person with a disability" the same rights "as a person who is able-bodied."

117. Defendant treated Plaintiff less favorably because of his disability, failed to provide a reasonable accommodation for Plaintiff's disability, and knowingly allowed a hostile education environment on the basis of his disability.

118. The discriminatory actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

119. Plaintiff suffered injuries as a result of Defendant's conduct.

120. Plaintiff asserts this claim against Jefferson Parish School Board.

### FOURTH CLAIM – Disability Discrimination (La. Rev. Stat. § 51:2247)

121. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

122. Defendants violated La. Rev. Stat. § 51:2247 because they "den[ied] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, … on the grounds of … disability."

123. Defendants treated Plaintiff less favorably because of his disability, failed to provide a reasonable accommodation for Plaintiff's disability, and knowingly allowed a hostile education environment on the basis of his disability.

124. The discriminatory actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

125. Plaintiff suffered injuries as a result of Defendants' conduct.

126. Plaintiff asserts this claim against all Defendants.

### FIFTH CLAIM –Substantive Due Process (42 U.S.C. § 1983)

127. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

128. The Defendants are "person[s]" acting under color of state law under 42 U.S.C. § 1983.

129. The Defendants violated Plaintiff's right to substantive due process under the Fifth and Fourteenth Amendments to the U.S. Constitution, namely, his right to bodily integrity.

130. The Defendants knew or should have known that their actions were unconstitutional.

131. The actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

132. The Defendants' actions caused Plaintiff damages.

133. Plaintiff asserts this claim against all Defendants.

### SIXTH CLAIM (42 U.S.C. § 1983 – Excessive Force)

134. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

135. The Defendants are "person[s]" acting under color of state law under 42 U.S.C. § 1983.

136. The Defendants violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution by using unjustified force against him.

137. The Defendants knew or should have known that their actions were unconstitutional.

138. The actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

139. The Defendants' actions caused Plaintiff damages.

140. Plaintiff asserts this claim against all Defendants.

## SEVENTH CLAIM (42 U.S.C. § 1983 – Equal Protection)

141. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

142. The Defendants are "person[s]" acting under color of state law under 42 U.S.C. § 1983.

143. The Defendants violated Plaintiff's Equal Protection rights under the Fourteenth Amendment by treating him less favorably than non-disabled students on the basis of his disability and knowingly allowing a hostile education environment on the basis of his disability.

144. There was no rational basis for the Defendants' unequal treatment of Plaintiff.

145. The Defendants knew or should have known that their actions were unconstitutional.

146. The actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

147. The Defendants' actions caused Plaintiff damages.

148. Plaintiff asserts this claim against all Defendants.

## EIGHTH CLAIM (Louisiana Battery)

149. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

150. The Defendants committed battery against Plaintiff, because they made a harmful or offensive contact with Plaintiff and intended to cause Plaintiff to suffer such a contact.

151. Plaintiff suffered injuries as a result of Defendants' conduct.

152. Plaintiff asserts this claim against all Defendants.

## NINTH CLAIM (Negligence)

153. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

154. The Defendants had a duty to Plaintiff to conform their conduct to a specific standard of care, and their conduct fell below that standard of care.

155. The standard of care is set by statute. Because the Defendants' conduct fell below that standard, their conduct constitutes negligence per se.

156. The Defendants' negligence caused Plaintiff damages.

157. Plaintiff asserts this claim against all Defendants.

### TENTH CLAIM (42 U.S.C. § 1983 – Failure to Train)

158. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

159. The Defendants' training policies with regard to corporal punishment for special education students are either nonexistent or insufficient.

160. The Defendants were deliberately indifferent to this insufficiency in adopting their policies.

161. The insufficiency of the policies was the moving force behind the violations of Plaintiff's constitutional rights.

162. The Defendants knew or should have known that their failure to adequately train its employees would cause a constitutional violation.

163. The Defendants had actual or constructive notice of a pattern of similar constitutional violations caused by the policies.

164. Plaintiff asserts this claim against Jefferson Parish School Board and Emily Anderson.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendants' conduct as set forth above violates 29 U.S.C. § 794; 42 U.S.C. § 12132; 20 U.S.C. § 1414; and La. Rev. Stat. §§ 46:1953 & 51:2247.

2. Declaring that Defendants' conduct violates Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

3. Declaring that Defendants are liable for Louisiana battery and negligence;

4. Declaring that defendants Jefferson Parish School Board and Emily Anderson are liable for negligence and failure to train;

5. Entering an injunction directing that Defendants and their officers, directors, agents, employees and successors, and all other persons in active concert or participation with Defendants, take all affirmative steps necessary to remedy the effects of the illegal, discriminatory, and tortious conduct alleged herein and to prevent similar occurrences in the future;

6. Awarding compensatory damages to Plaintiff for injuries caused by Defendants' discriminatory and tortious conduct, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 46:2256, La. Rev. Stat. § 51:2264, and any other applicable provisions.

7. Awarding punitive damages to Plaintiff for injuries caused by Defendants' discriminatory and tortious conduct, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12188, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 46:2256, La. Rev. Stat. § 51:2264, and any other applicable provisions.

8. Awarding costs and attorney's fees to Plaintiff, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 46:2256, La. Rev. Stat. § 51:2264, and any other applicable provisions;

9. Requiring that Defendants put into place policies and training to prevent corporal punishment from occurring in the future;

10. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which he is entitled.

Respectfully submitted,

August 15, 2021

___/s/ *Chris Edmunds*___

Chris Edmunds, Counsel for Plaintiff
LBSA: 37670
Chris Edmunds Law Office
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com